**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **CONTINENTAL ASSURANCE COMPANY,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:14-CV-01364 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **COLE, FRAGO, CUSICK, CHESTLER & CO., RICHARD GUERRIERE, EDWARD G. CHESTLER, JAMES L. COHEN, AND KAREN CUSICK, as EXECUTRIX OF THE ESTATE OF STANLEY L. CUSICK,** | : | |
| **Defendants.** | : | **December 2, 2015** |

**MEMORANDUM OF DECISION GRANTING DEFENDANT/CROSS-CLAIMANT COLE FRAGO'S MOTION FOR SUMMARY JUDGMENT [Dkt. 36] AND DENYING DEFENDANT/CROSS-CLAIMANT KAREN CUSICK'S MOTION FOR SUMMARY JUDGMENT [Dkt. 34]**

I.    <u>Introduction</u>

        This is a consolidated case consisting of two interpleader actions brought

by Plaintiffs Continental Life Assurance Co. ("Continental") and Jackson National

Life Insurance Co. ("JNL") against Defendant/Cross-Claimant Karen Cusick, as

Executrix of the Estate of Stanley L. Cusick (the "Estate"), and Defendant/Cross-

Claimants Cole, Frago, Cusick, Chestler & Co. LLC ("Cole Frago"), Richard

Guerriere ("Guerriere"), Edward G. Chestler ("Chestler"), and James L. Cohen

("Cohen") (collectively, the "Cole Frago Defendants").  Both interpleader actions

seek to determine proper payment of proceeds under two life insurance policies

issued by Plaintiffs to Cole Frago, both of which were paid for by Cole Frago and

named Cole Frago as the sole beneficiary.  Ms. Cusick and Cole Frago
subsequently cross-claimed against one another seeking a declaratory judgment
that they were entitled to the proceeds of the two life insurance policies at issue.
Currently pending before the Court are the Defendants' cross Motions for
Summary Judgment.  For the reasons that follow, Cole Frago's Motion for
Summary Judgment is GRANTED and Ms. Cusick's Motion for Summary
Judgment is DENIED.

## II.    Factual Background

Defendant/Cross-Claimant Cusick failed to file a Local Rule 56(a)1
Statement setting forth "a concise statement of each material fact as to which the
moving party contends there is no genuine issue to be tried."  And in response to
Defendant/Cross-Claimant Cole Frago's own Motion for Summary Judgment and
accompanying Local Rule 56(a)1 Statement, Cusick also failed to file a Local Rule
56(a)2 Statement stating "whether each of the facts asserted by the moving party
is admitted or denied."  As such, the Court deems all of the facts set forth in Cole
Frago's Local Rule 56(a)1 statement to be admitted.  *See Lewis v. Cavanaugh*, No.
3:10-cv-00112-VLB, 2015 W~ 540593, at *1 (D. Conn. Feb. 10, 2015) (where a non-
moving party fails to submit a Local Rule 56(a)2 statement or to otherwise
appropriately deny the moving party's properly supported material facts, those
facts are deemed to be admitted).  Nonetheless, in support of its Motion for
Summary Judgment, Cusick did file a memorandum making certain factual
allegations, largely without citation.  Thus, the following facts relevant to the

instant Motions for Summary Judgment are undisputed, unless otherwise indicated by reference to Cusick's memorandum of law.

Cole, Frago, Cusick, Chestler & Co., an accounting partnership, incorporated as a limited liability company known as Cole, Frago, Cusick, Chestler & Co., LLC ("Cole Frago") on January 1, 1994.  [Dkt. 37, Ex. 2, Cole Frago Statement of Material Facts ("SOMF") ¶ 5].  At the time of incorporation, the partners, who became members of the Company, were Frank Frago, Stanley L. Cusick ("Cusick"), and defendants Edward Chestler, James Cohen, and Richard Guerriere.  [Id. ¶ 6].

The Company purchased and maintained "key man" life insurance policies on the lives of each of its partners/members, including the decedent Stanley L. Cusick.  [Id. ¶ 7].  In fact, Cole Frago purchased two separate policies insuring the life of Stanley L. Cusick; the first policy was purchased from Continental in 1993 and had a $100,000 face value (the "Continental Policy"), and the second policy was purchased from JNL with a $300,000 face value (the "JNL Policy") (collectively the "Policies").  [Id. ¶¶ 1, 2].  Cole Frago was both the owner and the beneficiary of both the JNL Policy and the Continental Policy.  [Id. ¶¶ 1, 2].  The policies provided that in the event the beneficiary pre-deceased the insured, the proceeds of the policies would be paid to the "Owner."  [Id. ¶ 29].

Stanley Cusick retired effective December 31, 1996 and entered into a Retirement Agreement with vole Frago.  [Id. ¶¶ 11, 12]. Under the terms of the Retirement Agreement, Cusick assigned to Cole Frago all "right, title, and

interest" in the company in exchange for a lump sum retirement payment of $436,340 that was to be paid over the course of ten years until 2006.  [Id. ¶¶ 13, 14].

The Retirement Agreement also provided that Cole Frago could, at its discretion, continue to pay for and maintain both the Continental Policy and the JNL Policy, provided that if Cole Frago no longer desired to pay for the policies it would provide Cusick with notice and an opportunity to purchase the policies. [Id. ¶¶ 15, 16].  Section Nine of the Retirement Agreement  (the "Notice Provision") specifically provided:

> The Company shall continue to pay for and maintain the life insurance policies owned by the Company which insure Cusick until December 31, 1996. The Company shall have the option to continue to pay for and maintain such policy or policies after such date.
>
> If the Company does not desire to continue to pay for and maintain any such policy, the Company shall give Cusick prior written notice and the opportunity to purchase such policy.

[Dkt. 37-7. Ex. A4.1, Retirement Agreement ¶ 9].

For the next year, Cole Frago maintained and paid for both policies; however, on November 1, 1997, the three remaining members of Cole Frago, defendants Guerriere, Cohen, and Chestler, merged their company with another accounting firm, Blum Shapiro and Co., P.C.  [SOMF ¶ 17].  Under the terms of the merger, Blum Shapiro agreed to assume the obligation to pay the remainder of Cusick's retirement benefit payments through 2006.  [Id. ¶ 18].  Blum Shapiro also provided Cusick's medical insurance benefits from 2000 through 2005.  [Id. ¶ 19].

4

From 1997 through 2006, Blum Shapiro issued the checks that were used to pay the premiums on both policies.  [Id. ¶ 20].  However, at his deposition, Mr. Guerriere stated that "a[]n increasing portion of every premium initially paid by Blum Shapiro on the policies through 2006 was charged back to the equity accounts of Guerriere, Cohen, and Mr. Chestler."  [Id. ¶ 21].  After 2006, Geurriere, on behalf of Cole Frago and defendants Cohen and Chestler, began paying the policy premiums directly.  [Id. ¶ 22].

On or about February 10, 2003, Guerriere filed articles of dissolution with the Connecticut Secretary of State on behalf of Cole Frago.  [Id. ¶ 24].  Mr. Guerriere testified at his deposition that after filing articles of dissolution, the Company "continued the process of winding up its affairs," which primarily included liquidating its three remaining assets: the Continental Policy, the JNL Policy, and a third life insurance policy on the life of former member, Frank Frago.  [Id. ¶¶ 10, 25].  Cole Frago, however, elected not to liquidate any of the policies to effect a wind up, instead maintaining the policies until the eventual deaths of Stanley L. Cusick and Frank Frago.  [Id. ¶ 26].  During this time, Cole Frago could have redeemed or surrendered the policies in order to immediately complete the wind up process, but chose not to do so in order to obtain a higher payout of benefits upon the deaths of Frago and Cusick.  [Id.].

After the death of Stanley L. Cusick on April 8, 2014, the Company and the Estate submitted competing claims for payment of the death benefit proceeds of both the Continental Policy and the JNL Policy.  [Id. ¶¶ 30, 31].   In two letters to JNL, the attorney for the Estate represented that Cole Frago had dissolved in

2003, relying solely on the articles of dissolution, and instructed Jackson National to "review your policy to see who the appropriate beneficiary should be." [Id. ¶ 34].  Continental and JNL both followed up with Cole Frago, requesting additional information.  [Id.¶ 35].   In response, Guerriere provided the insurers with a 2013 income tax return for the Cole Frago LLC as well as a copy of the Cole Frago Operating Agreement.  [Id. ¶¶ 35, 45].

On May 16, 2014, the attorney for the Estate again wrote to both insurers, arguing that: "[t]he information that we have indicates that this policy was never transferred to the Blum Shapiro Company.  Therefore, this policy became the property of the individual as the Cole Frago entity was dissolved in 2003."  [Id.¶ 36; Dkt. 37, Ex. C3 and C4].  Four days later, the Estate filed a consumer complaint with the Commissioner of the Connecticut Department of Insurance. [Id.¶ 39].

Jackson National responded to the Department regarding the Estate's consumer complaint on June 5, 2014.  [Id.¶ 42].  Citing Conn. Gen. Stat. § 34-210, JNL advised the Estate that "pursuant to Connecticut law, Cole Frago Cusick Chestler and Co, LLC (the named beneficiary} remains entitled to collect the proceeds, notwithstanding the fact that it is dissolved."  [Dkt 37, Ex. C8].  JNL further advised the Estate in later correspondence that:

> Per the policy language, there is no circumstance under which your client is entitled to collect the proceeds. In this regard, see the policy pages, attached, and note in particular section 3.34, which provides that if there is no beneficiary, the proceeds are payable to the Estate of the OWNER (not the estate of the insured).
>
> [Dkt 37, Ex. C10.]

6

On September 17, 2014 JNL initiated this interpleader action against Cole Frago and the Estate, with Continental filing a similar interpleader suit the next day against both defendants.  The actions were consolidated before this Court, and the parties have filed cross-Motions for Summary Judgment.  [Dkt. 34, 36].

**Legal Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary

judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

### III.   Discussion

The thrust of the Estate's argument in support of its Motion for Summary Judgment and in opposition to the cross-motion of Cole Frago is that Cole Frago had a duty under the Retirement Agreement "to inform Stanley L. Cusick that it had stopped paying the premiums on the policy."  Cole Frago, the Estate argues, "failed to do so breaching the Agreement."  The Estate filed a single memorandum, with unenumerated pages and a factual background section largely without citation.  The Estate failed to file a Local Rule 56(a)(1) Statement of Material Facts or a Local Rule 56(a)(2) Statement of Disputed Facts.  The Estate's memorandum anticipated one argument which was also raised by Cole Frago, arguing that the statute of limitations has been tolled by a continuing course of conduct on the part of Cole Frago.

In opposition and in support of its own Motion for Summary Judgment, Cole Frago argues that the Estate's breach of contract claim is time-barred by the statute of limitations, that the duty to notify Cusick and offer him an opportunity to purchase the policies under the Retirement Agreement was an unenforceable promise and that in any case Cole Frago has not breached the Retirement Agreement.  By contrast, the Estate's one paragraph "Objection" to Cole Frago's Motion for Summary Judgment merely incorporated its prior brief by reference, without further addressing any of the arguments raised by Cole Frago.

### A.  Statute of Limitations

Cole Frago claims that the Estate's breach of contract claim fails as a matter of law because it is barred by Connecticut's six year statute of limitations for breach of contract actions.  *See* Conn. Gen.Stat. § 52-576(a).  In an action for breach of contract, "the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted."  *Tolbert v. Connecticut Gen. Life Ins. Co.*, 778 A.2d 1, 5 (Conn. 2001).  Because, according to the Estate, Cole Frago breached the Retirement Agreement as of February 10, 2003, when it filed articles of dissolution with the Connecticut Secretary of State, Cole Frago argues that the Estate's cause of action began to accrue on that date. *See* Dkt. 38, Cole Frago's Memorandum in Opposition to the Estate's Motion for Summary Judgment ("Opp. Mem.") at 9.

The Estate has argued, however, that the statute of limitations may be tolled if Cole Frago engaged in a continuing course of conduct.[1]  The continuing course of conduct doctrine is "conspicuously fact-bound."  *Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 188 (D. Conn. 2007) (JCH) (*citing Blanchette v. Barrett*, 229 Conn. 256, 276, 640 A.2d 74 (1994)).  A finding of a continuing course of conduct may be supported by "evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto."  *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 35 (D. Conn. 2009) (VLB) aff'd, 410 F. App'x 362 (2d Cir. 2010) (*quoting Neuhaus v. DeCholnoky*, 905 A.2d 1135, 1143 (Conn. 2006)).  Thus, the Estate's claim is not time-barred as a matter of law if there is a genuine issue of material fact with respect to whether Cole Frago: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty."  *Nieves v. Cirmo,* 787 A.2d 650, 654 (Conn. App. 2002).

Courts have held "that a duty continued to exist after cessation of the act or omission relied upon" where there has been "evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act."  *Neuhaus*, 905 A.2d at 1143.  Although, as Cole Frago has noted, "the existence of a contractual relationship alone is insufficient to establish a "special relationship," *Fichera v.*

---

[1] The Estate did not raise an argument in its memorandum that the Statute of Limitations may have been tolled by fraudulent concealment of the Estate's cause of action by Cole Frago.

*Mine Hill Corp.*, 541 A.2d 472 (Conn. 1988), Connecticut courts have distinguished "between a contract obligation . . . providing for a continuing, indivisible responsibility for the attainment of an end result, and a contract for the performing of a specific, definable act." *See Skidmore, Owings & Merrill v. Connecticut Gen. Life Ins. Co.*, 197 A.2d 83, 91 (Conn. Super. Ct. 1963).

Cole Frago argues that its obligation to notify Cusick was "a single required act, even if the duty to perform it actually continue[d]." *See* Opp. Mem. at 11, *citing Bellemare v. Wachovia Mortg. Corp.*, 284 Conn. 193, 198 n.7 (2007) (failure to provide release of mortgage in violation of statutory obligation "constituted a single omission and not an ongoing or recurring wrongful act"). The Estate counters that the conduct was continuous through the date of Cusick's death in 2014, as Cole Frago, on an ongoing basis, failed "to inform Stanley L. Cusick that other legal entities and individuals were paying for policies [sic]." The Court need not consider whether there was a dingle or a continuing duty because Cusick has failed to establish that any duty existed.

Cusick alleges that Cole Frego's duty arises under the Retirement Agreement. The only duty to notify Cusick about the payment of insurance premiums is found in the Notice Provision. The Notice Provision states that Cole Frago must give Cusick prior written notice only if does not desire to continue to pay for *and maintain* the Policy. Thus, Cole Frago had no duty to give Cusick notice of the source of the insurance premiums – because Cole Frago chose to maintain the policy it had no duty to notify Cusick either of that fact or the method by which it maintained the Policy. The Estate's claim that the statute of

limitations should be tolled fails for the same reason that the breach of contract claim itself must fail.  As discussed below, Cusick has failed to raise a genuine issue of fact that the Notice Provision in the Retirement Agreement was ever triggered.

### B. Breach of Contract

Under Connecticut law, in order to establish a breach of contract, a plaintiff must show "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."  *Bross v. Hillside Acres, Inc.*, 887 A.2d 420 (Conn. App. 2006).  The only issue presented is whether Cole Frago has breached Section 9 of the Retirement Agreement, which provides that "[i]f the Company does not desire to continue to pay for and maintain any such policy, the Company shall give Cusick prior written notice and the opportunity to purchase such policy."

In determining whether breach has occurred, the court must ascertain the contractual rights and obligations of the parties.

> In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction.... Where the language is unambiguous, we must give the contract effect according to its terms.... Where the language is ambiguous, however, we must construe those ambiguities against the drafter.... [A] contract is unambiguous when its language is clear and conveys a definite and precise intent.... The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity.... Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.... In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself.... [A]ny ambiguity in a contract must emanate from the language

**12**

used by the parties.... The contract must be viewed in its entirety, with each provision read in light of the other provisions ... and every provision must be given effect if it is possible to do so.... If the language of the contract is susceptible to more than one reasonable Interpretation, the contract is ambiguous.

*Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*, 14 A.3d 284 (Conn. 2011) (*quoting Cantonbury Heights Condominium Ass'n, Inc. v. Local Land Development*, LLC, 873 A.2d 898 (Conn. 2005)).  Moreover, there is a presumption, as recognized by the Connecticut Supreme Court, that "the language used is definitive" when "the contract at issue is between sophisticated parties and is commercial in nature." *William Raveis Real Estate, Inc. v. Newtown Group Properties Ltd. Partnership*, 898 A.2d 265 (Conn. App. 2006) (*quoting United Illuminating Co. v. Wisvest–Connecticut, LLC*, 791 A.2d 546 (Conn. 2002)).

Neither party has specifically argued that Section 9 of the Retirement Agreement in general, or the word "desire" or "maintain"  in particular, is ambiguous.  The terms "desire" and "maintain," and the Notice Provision generally, "must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Tallmadge Bros., Inc. v. Iroquois Gas Transmission System*, L.P., 746 A.2d 1277 (Conn. 2000) (citation omitted).  The natural and ordinary reading of the Notice Provision is that Cusick had a right to receive notice if Cole Frago ever reached a point where it no longer wished to continue paying the premiums on the policies. The Court finds that the language of the provision is clear and imparts a definite and precise meaning.

There is no evidence on the record that any of the three remaining members of Cole Frago did not wish to maintain the Polices by paying the insurance premiums.  Rather, the Estate argues that Cole Frago breached the Retirement Agreement because it "dissolved in 2008 [sic]."  Assuming the Estate was referring to the filing of articles of dissolution in 2003, the Court will construe this as an argument that, as a matter of Connecticut law, an entity that has filed articles of dissolution cannot desire to continue maintaining or making payments upon an insurance policy to wind-up its affairs.  The Estate offers no authority in support of such a proposition.

On the contrary, a dissolved LLC may continue to carry on its business after a dissolution in order to wind up the affairs of the LLC.  Connecticut law provides that:

> (b) The persons winding up the business and affairs of the limited liability company may, in the name of, and for and on behalf of, the limited liability company: (1) Prosecute and defend suits; (2) settle and close the business of the limited liability company; (3) dispose of and transfer the property of the limited liability company; (4) discharge the liabilities of the limited liability company; and (5) distribute to the members any remaining assets of the limited liability company.

> Conn. Gen. Stat. Ann. § 34-208 (West).

On the one hand, there is no clear statutory prohibition in Section 34-208 against an LLC preserving and maintaining three insurance policies until the insureds have died and subsequently distributing the payouts on those policies to the remaining members of the LLC.  Notwithstanding, the maintenance of the Policy was a permissible means of winding-up the LLC.  Each Policy was an asset of the LLC, and the disposition of assets is a permissible winding-up activity.

14

The dispositive value of these assets were maximized by delaying its disposition until after the demise of the insured former members.  Section 34-208 does not set forth, and the Connecticut Supreme Court has not imposed, any requirement that a wind-up period be completed within any specific time limit.  *See Campisano v. Nardi*, 562 A.2d 1, 5 (Conn. 1989) ("this court has previously refrained from imposing a strict time limit on the completion of winding up activities") (*citing Stolman v. Boston Furniture Co.*, 120 Conn. 235, 244 (1935)).  Extending the wind-up of an LLC until the demise of insured former members does not prolong the wind-up indefinitely, as there is a definite end once the insureds have died, and thus such an action is not inimical to the notion of dissolution.

Another problem with the Estate's position is that – even if the Court was inclined to hold that Cole Frago acted impermissibly by maintaining the life insurance Policies at issue during a nine-year wind-up period – proof of such impermissible activity would not necessarily, in this case, be evidence of breach. The allegation that Cole Frago was not authorized to continue paying the Policy premiums indefinitely during the wind-up process would not evidence that Cole Frago did not 'desire' to maintain the Policies.  Geurriere and the other remaining members could have had a good faith but mistaken belief that the choice to continue payment of the premiums after dissolution was permissible as part of the wind-up process under Connecticut law.

Yet another problem with the Estate's position is that even if the Court were able to draw the inference urged by the Estate – that dissolution should have automatically terminated Cole Frago's *ability* to desire to maintain the

15

Policies – on the Record before the Court, it appears that notwithstanding the filing of articles of dissolution in 2003, the Cole Frago LLC was never legally dissolved.  Connecticut law provides that there are only three ways that a company can be dissolved.  Specifically:

> A limited liability company is dissolved and its affairs shall be wound up upon the happening of the first to occur of the following: (1) At the time or upon the occurrence of events specified in writing in the articles of organization or operating agreement; (2) unless otherwise provided in writing in the articles of organization or operating agreement, upon the affirmative vote, approval or consent of at least a majority in interest of the members; or (3) entry of a decree of judicial dissolution under section 34-207.

> Conn. Gen. Stat. Ann. § 34-206 (West).

Notably, the filing of articles of dissolution is not an act that in and of itself can dissolve an LLC under Title 34 of the Connecticut General Statutes, the Connecticut Limited Liability Company Act.  Although one provision of Title 33, the Nonstock Corporation Act, provides that a corporation (as opposed to an LLC) is "dissolved upon the effective date of its certificate of dissolution," Conn. Gen. Stat. Ann. § 33-882 (West), no similar provision exists in Title 34.  Rather, it appears that an LLC is effectively dissolved only "upon the happening" of an event described in Section 34-206.  Thus, while the filing of articles of dissolution will serve notice to the Connecticut Secretary of State under Section 34-211, and will commence a limitations period in which persons may bring claims against the LLC under Sections 34-213 and 34-214, the document itself does not terminate an entity's corporate existence.

16

Cole Frago has argued and Cusick has not refuted that "the steps necessary to effect either dissolution or termination under the terms of the Company's Operating Agreement and the Connecticut Limited Liability Company Act . . . have yet to occur," essentially an argument that the 2003 articles of dissolution were invalid.  The Cole Frago Operating Agreement specifically provides:

> 18.1 Dissolution. The Company shall be dissolved upon the occurrence of any of the following events:
>
> (a) the written consent of all of the Members;
>
> (b) January 1, 2020; or
>
> (c) any Member withdraws, resigns, retires, becomes disabled as defined in this Agreement, dies, files a petition in bankruptcy, is adjudicated bankrupts or insolvent, or otherwise ceases to be a Member in the Company under the Act, provided, however, that the Company shall not be dissolved if there are at least two (2) remaining Members after such event, and a majority of the remaining Members consent in writing to the continuation of the Company within ninety (90) days after such event.
>
> [Ex. A3 (Operating Agreement) ¶ 18.1.]

When Mr. Cusick retired, the remaining members of the Company resolved in writing to continue the Company after his retirement pursuant to Sec. 18.1(c). [Dkt. 37, Ex. A4-4].  In addition, the remaining members of the company have never provided the written consent that would be necessary to effect dissolution of the Company in accordance with Sec. 18.1(a).  [SOMF ¶ 25].  The evidence on the Record, uncontroverted by the Estate, is therefore clear that the LLC was never dissolved, notwithstanding the filing of articles of dissolution.

The Estate has also argued that Cole Frago was obligated to notify Cusick that "other legal entities were paying for" Policy premiums.  As noted above, such an obligation is not found in the Retirement Agreement.  Rather, the Court will construe this as an argument that a reasonable trier of fact can equate – or perhaps conflate – that corporate entity X lacked the desire to pay for an item because the checks used for payment were issued by corporate entity Y.  This could be a reasonable inference where other facts supported such a finding, but here, there are no facts on the Record that support such an inference.

In his declaration in support of Cole Frago's Motion, Guerriere states that he "desired to continue paying the policy premiums" in order to "retain our eligibility to collect the insurance proceeds of the policies."  [Ex. A., ¶ 17].  Cole Frago's Rule 56(a)(1) Statement also states that when he began personally paying the premiums on the two policies in 2006, he did so "on behalf of the Company and its three remaining members."  [SOMF ¶ 22].  Black's Law Dictionary defines the word "maintain" to include, among other definitions, "to continue," to "care for," and to "support financially."   *See* "Maintain," Black's Law Dictionary (10th ed. 2014).  This is precisely what Cole Frago has done with respect to the Policies.

There are circumstances in which a material issue of fact could be raised regarding whether Guerriere's statements conclusively establish that the LLC at all times desired to continue paying and maintaining the Policy premiums, but not under the facts and circumstances of this case.  The Estate did not file a Local Rule 56(a)(2) Statement and thus admits and renders true Guerriere's statement

that he paid Policy premiums on behalf of the LLC and its surviving partners to maintain the policy in force. [2]  Thus, there is no triable issue of fact that the premiums were paid on behalf of the LLC or that the LLC desired to maintain the Policy in full force and effect in order to maximize its value and settle the LLC's liability to its surviving members.

Finally, the Court considers the substance of the contract provision at issue and whether Cusick received the benefit of his bargain.  Cusick, a partner at a sophisticated accounting firm, negotiated a commercial agreement with that firm for the right to purchase the accrued value of the insurance Policies from Cole Frago, thereby preserving the future value of the JNL and Continental Policies for his own designated beneficiaries, if Cole Frago ever elected to surrender the policies early or allow them to lapse without his knowledge.  No such surrender or lapse, and no such election, ever took place.  It cannot be said that Cusick did not receive the benefit of his bargain. Further, as noted above, the Notice Provision only entitled Cusick to notice of Cole Frago's intent not to maintain the Policy.  There is no evidence on the record that Cole Frago ever manifested an intent not to maintain the policies.  Thus the Notice Provision never triggered a duty for Cole Frago to give Cusick notice of how the Polity premiums were being paid.

On the contrary, Cole Frago has submitted evidence on the Record, uncontroverted by the Estate, that it desired to maintain payment on the policies,

_____

[2] The Estate notably failed to even seek the leave of this Court to belatedly file a Local Rule 56(a)(2) Statement even after the issue was prominently noted in Cole Frago's briefing on Summary Judgment.

and manifested that desire by agreeing to have Blum Shapiro issue checks to pay the Policy premiums for a period of time and to charge surviving Cole Frago members for a portion of the Policy premiums paid before Mr. Guerriere eventually determined to pay the premiums out of his own account.  No provision of the Retirement Agreement prevented such an arrangement, and the arrangement does not indicate a desire on Cole Frago's part to no longer pay the premiums, but rather, a desire to ensure the premiums would continue to be paid well after the merger.

Finally, the result adheres to the purpose and intent of a "key man" life insurance policy, which is taken out for the benefit of a corporation, often for the purpose of funding expenses attributable to the individual insured.[3]  In this case, the stated purpose of maintaining the Policies was "solely to reimburse [Cole Frago's] payout of retirement benefits to Stanley Cusick."  [SOMF ¶ 9].  The Record is therefore clear that the intent of the LLC in taking out this policy was to allow the LLC to maintain ownership of the policy until such time as the liability arising out of the Retirement Agreement had been fully satisfied.

Cusick offers no evidence to suggest that at any time, this ongoing Cole Frago LLC entity did not "desire to continue to pay for and maintain" the life insurance Policy at issue and therefore was required to provide notice to Mr. Cusick under the Retirement Agreement.  Cusick's claim to the insurance

---

[3] "A director of a corporation may take out insurance on his or her own life, and make it payable to the corporation, paying the premiums him or herself . . . [t]his type of insurance is often referred to as 'key man insurance,' and the corporation is recognized as having an insurable interest in the life of the insured."  4 Couch on Ins. § 59:8.

proceeds, based entirely on an argument that Cole Frago is in breach of Section Nine the Retirement Agreement due to an alleged lack of notice, therefore fails.

**IV.**     **Conclusion**

For the foregoing reasons, Cole Frago's Motion for Summary Judgment are GRANTED and Cusick's Motion for Summary Judgment is DENIED.  The Clerk is directed to enter judgment in favor of Defendant/Cross-Claimant Cole Frago and to close the case.

**IT IS SO ORDERED.**

**_____/s/_____**
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: December 2, 2015**